OPINION

SLOVITER, Circuit Judge.
Kramont Operating Partnership, L.P. (“Kramont”) appeals the District Court’s grant of summary judgment in favor of H. Irwin Levy. Kramont alleges that Levy has a contractual obligation to reimburse it for state income taxes that it paid after Levy sold his partnership interest to Centro Watt America III, L.P. (“Centro Watt”). For the reasons that follow, we affirm the judgment of the District Court.
I.
Kramont was formed in 2000. Kramont Trust was the general partner and H. Irwin Levy, as well as other members of his family, were limited partners. Kramont was not a tax-paying entity, and was used to pass taxable income through to the partners. However, under the partnership agreement, Kramont was obligated to pay the tax amounts for “any amount distributable or allocable to such Limited Partner pursuant to this Agreement.” App. at 166. This amount was to be treated as a loan under the partnership agreement, and the *145 limited partner was obligated to repay Kramont within a certain time period or face interest charges. For the tax years 2001, 2002, 2003, and 2004, Kramont paid non-resident withholding taxes for Levy, who repaid the amount before any interest accrued.
In 2005, Kramont, along with Kramont Trust and another limited partnership, merged with subsidiaries of Centro Watt pursuant to an extensive agreement. At exact times, which are not in dispute, a series of mergers occurred. As relevant to this discussion, under this agreement, the first merger occurred between Kra-mont and CWAR OP Merger Sub, LLC at 4:02 p.m. on April 18, 2005. Through this merger, Levy and his family immediately had them limited partnership shares, which are referred to in the documents as “units” converted into the right to later receive $23.50 a unit, while the managing and non-managing members of CWAR OP Merger Sub, LLC, became the general and limited partners of Kramont, and the partnership adopted a new partnership agreement. The second merger occurred sometime thereafter but before 4:18 p.m. the same day. At 4:18 p.m. on April 18, 2005, the third (and final) merger occurred between Kramont Trust (the former general manager of Kramont) and CWAR OP Merger Sub III Trust.
The merger agreement also specified that Kramont would not pay any distribution to the limited partners from the time the merger agreement was signed, except the fourth quarter distribution from 2004. Because the agreement was signed on January 25, 2005, but the merger was not completed until April 18, 2005, the first quarter distribution was not paid to Levy and the former limited partners of Kra-mont, but rather to the new limited partners.
Levy received the full payment of $23.50 a unit for his former limited partnership units by wire transfer on April 21, 2005. After the merger, Kramont paid taxes on the money received by Levy and his family members. Kramont then requested repayment of this money on September 23, 2005, and April 12, 2006. On July 5, 2006, a Kramont auditor wrote to Levy stating that Kramont had been required to pay the tax for Levy under state law and requested that Kramont be reimbursed. Levy declined, stating that he did not believe he was required to repay the partnership because “any liabilities incurred after December 31, 2004, were the obligation of the purchaser.” App. at 440.
When family members contacted Levy asking whether they should pay Kramont for the tax payments it made on their behalf, Levy explained to the family members why he did not intend to repay the money, but also told them to do whatever they wanted.
II.
The 83-page merger agreement has a provision dealing with tax treatment, which states, inter alia, “The parties hereto shall treat the Mergers for all income tax purposes as a taxable purchase of assets by Acquiror in exchange for the Merger Consideration.” App. at 341 (emphasis added).
Kramont brought suit against Levy demanding repayment of the funds it had paid to the taxing authorities and claiming that Levy had tortiously interfered with a contract by telling his family members not to repay Kramont for the money paid in taxes. The District Court granted summary judgment to Levy, holding that the contractual obligation to repay the tax money had been superceded by the merger agreement, and that Levy was justified *146 in telling his relatives his plans regarding the tax payment. We will affirm.[1]
Kramont has presented no case law discussing why we should disregard the contractual obligations of the parties. The merger agreement specified that the series of mergers were to be treated as a sale of assets. As the District Court observed, this sale could not have occurred until after all three mergers were completed, by which point, under the merger agreement, Levy was no longer a limited partner of Kramont. He was therefore under no contractual obligation to repay the funds advanced. It is irrelevant whether Kramont correctly stated in its July 5, 2006, letter to Levy that it had an obligation to pay taxes for Levy. The issue in this case is not whether federal or state taxes needed to be paid, but whether Levy was contractually required to repay tax money paid on his behalf by Kramont. Accordingly, in our view, Kramont’s repeated citations to federal tax codes and regulations, as well as state tax codes incorporating the federal code, are not dispositive.[2] As Kramont has presented no argument why we should disregard the decision of the District Court that the contract was valid nor has it persuaded us that the District Court’s understanding of the contract was flawed, we have no reason to overturn the decision of the District Court.[3]
We likewise agree that Levy did not tortiously interfere with the contract. Under Pennsylvania law, the plaintiff must show the following to succeed on a claim for tortious interference with a contract:
(1) the existence of a contractual relationship between the complainant and a third party;
(2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;
(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual damage as a result of defendant’s conduct.
Phillips v. Selig, 959 A.2d 420, 429 (Pa.Super.Ct.2008). We agree with the District Court that, based on our conclusion regarding the repayment, Levy was justified in any communications made and that, re *147 gardless, there was no contractual relationship between Kramont and the family members with which the statements could have interfered. We also would be hesitant, as was the District Court, to hold a party liable for expressing personal opinions to a family member.
III.
For the foregoing reasons, we will affirm the District Court’s order granting summary judgment to defendant Levy.

. "Our review of a District Court’s grant of summary judgment is plenary, and we apply the same standard as the District Court to determine whether summary judgment was appropriate.” Bruesewitz v. Wyeth Inc., 561 F.3d 233, 238 (3d Cir.2009). The parties do not dispute the District Court’s conclusion that Delaware law applies to the repayment claim and Pennsylvania law applies to the tortious interference claim.

. Even if we accepted Kramont's contention that 26 U.S.C. § 708 and Treas. Reg. § 1.708-(c) established a taxable event for Levy at the time he was deemed to receive his merger certificates (i.e., 4:02 p.m. on April 18, 2005), we still would hold that Levy does not have a contractual obligation to reimburse Kramont for the taxes it paid. To be sure, the Kramont partnership agreement was in effect when Levy surrendered his partnership interests, and it generally obligated Kramont’s partners to repay any remitted taxes. See App. at 299, 340. But the partnership agreement did not determine Levy's obligations at the time he received his merger certificates. First, under Treas. Reg. § 1.708—(c)(3)(i), Levy did not receive his merger certificates until immediately after he surrendered his partnership interests at 4:02 p.m. on April 18, 2005, and ceased to have any rights or duties under the partnership agreement. See App. at 303. Second, for purposes of the mergers, it is clear that the specific tax-treatment provision at § 3.8(e) of the merger agreement, which authorized Kramont only to withhold funds for taxes from Levy's merger consideration payment, replaced the general tax-treatment provisions of the partnership agreement.

.We note that Kramont did not make an equitable claim for the return of the money, instead arguing that federal tax law, rather than the agreement of the parties, defined the taxable event.